```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION


MARY A. CURTIS,                     :

     Plaintiff,                     :

vs.                                 :
                                        CIVIL ACTION 06-0073-WS-M
JO ANNE B. BARNHART,                :
Commissioner of
Social Security,                    :

     Defendant.                     :
```

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*).  The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was heard on September 25, 2006.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Jo Anne B. Barnhart and against Plaintiff Mary A. Curtis.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richard-*

*son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born May 18, 1960.  At the time of the most recent administrative hearing, Curtis was forty-four years old, had completed a high school education (Tr. 58), and had previous work experience as a housekeeper (Tr. 58).  In claiming benefits, Plaintiff alleges disability due to problems with her back, right leg, and right hand (Tr. 247).

The Plaintiff protectively filed an application for disability insurance benefits on June 25, 2001 (Tr. 209-13); an application for SSI was protectively filed on April 11, 2002 (Tr. 505-08). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Curtis could not return to her past previous work as a housekeeper, she was able to perform a wide range of light exertion jobs (Tr. 20-36).[1]  Plaintiff requested review of the hearing decision (Tr. 18-19) by the Appeals Council, but it was denied (Tr. 12-24).

Plaintiff claims that the opinion of the ALJ is not

---

[1]This is actually the second decision by the ALJ; for a more complete case history, *see* Tr. 23-25.

2

supported by substantial evidence.  Specifically, Curtis alleges that the ALJ did not properly consider the opinions of her treating physician, Dr. Daniel Stubler, with regard to how her pain would affect her ability to work (Doc. 10).  Defendant has responded to—and denies—this claim (Doc. 11).

Dr. Daniel K. Stubler, a Neurologist, first examined Curtis on February 22, 2001, following a slip-and-fall accident at her job, causing back pain which radiated into her knees (Tr. 316-18, 428).  On examination, the doctor noted "some tenderness along the muscles in her neck and especially in the paraspinal muscles of the lumbar spine.  She [also had] some straight leg raising pain on the right but not the left" (Tr. 317).  It was the doctor's impression that she had "an irritative bilateral lumbar radiculitis, right worse than [the] left" (*id.*).  Stubler prescribed ultram[2] and restricted her to "no excessive bending, twisting or lifting anything greater than 20" pounds (Tr. 317-18).  On March 6, Curtis underwent an EMG NCV of her lower extremities which revealed remote right upper lumbar radiculopathy and possible myofascial pain syndrome; Stubler continued the ultram and referred her to a pain specialist (Tr. 315, 319-20).  On April 5, the Neurologist noted normal strength, that her sensory examination was intact, and that her deep tendon

---

[2]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

reflexes were decreased; again, she had tenderness along the lumbar paraspinal muscles and neck muscles (Tr. 314).  Stubler gave Plaintiff some samples of Lortab.[3]  The examination of May 3, 2001 provided, essentially, the same results though there was an additional notation of lumbar and cervical thoracic strain for which he prescribed Lortab and Soma[4] (Tr. 313).

　　　Dr. Patrick Couch, an Anesthesiologist, first examined Curtis on May 22, 2001 and noted "positive straight leg raise on the right at 30 degrees and on the left at 45 degrees.  There is positive extension at 10 degrees" (Tr. 379; *see generally* Tr. 378-80, 427).  The doctor noted that there were no sensory deficits and no cyanosis or edema in the extremities.

　　　On May 31, 2001, Dr. Stubler noted no change (Tr. 312).  An exam of June 25, 2001 revealed no changes (Tr. 310).

　　　Curtis underwent a series of lumbar epidural steroid injections by Dr. Couch, having one each on June 21, June 28, and July 6, 2001 (Tr. 374-77).  The Plaintiff reported positive results after the second injection (Tr. 374).

　　　On July 12, 2001, Dr. Stubler noted that Plaintiff stated that she was worse, suffering severe pain, since her visit with

---

　　　[3]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

　　　[4]*Soma* is a muscle relaxer used "for the relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours. *Physician's Desk Reference* 2968 (52nd ed. 1998).

4

him and after her three steroid injections by Dr. Couch (Tr. 436).  On that same date, Stubler sent her to Dr. Couch who noted that Curtis reported that the third injection had been of no benefit and that she had actually developed new pain in her tail bone; Dr. Couch decided to pursue more conservative treatment which included physical therapy twice a week for four weeks and a trial of Oxycontin[5] for a month, discontinuing the Lortab (Tr. 373).

A functional capacities evaluation was completed following an evaluation at Springhill Memorial Hospital during August 14-23, 2001 (Tr. 331-44).  Without going through every test, the Court notes that the recommendation was as follows:

> Ms. Curtis lifted solidly in the light category of work (up to 25 lb).  Her job as housekeeper is in the light category (up to 25 lb), yet it requires positions and activities that exacerbate lumbar and RIE symptoms (*i.e.*, trunk flexion, crouching, kneeling, repetitive squatting).  Ms. Curtis also exhibited traits that make her seem pain focused, although she performed well, functionally.  If the pain issue is addressed, light duty work is an option (if the other restrictions outlined in this report could be adhered to).  In this case, it is recommended that Ms. Curtis undertake vocational re-evaluation or be rerouted to an area which would accommodate her present condition.

---

[5] "*OxyContin* tablets are a controlled-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain where use of an opioid analgesic is appropriate for more than a few days."  *Physician's Desk Reference* 2344-46 (52nd ed. 1998).

5

(Tr. 332).

On August 22, 2001, Dr. Stubler stated that he thought that Curtis had reached maximum medical improvement (hereinafter *MMI*) and that she had "a 6% disability rating according to AMA guidelines;" he thought she should start with vocational rehab (Tr. 368). He continued the Lortab and started her on Celebrex.[6] On September 20, the doctor noted that, in addition to his usual diagnosis, that Curtis was suffering from Cephalgia, most likely secondary to neck strain, and she was complaining of headaches; Stubler continued the Celebrex and Lortab and added Fiorinal[7] as well as Neurontin[8] (Tr. 367). Examination results from October 17 were the same though Plaintiff said that her headaches were better and that her medications seemed to be working (Tr. 366). On November 12, Curtis said that she was worse; the Neurologist increased her Lortab and Neurontin prescriptions (Tr. 418).

On that same date, Dr. Stubler completed a physical capacities evaluation in which he indicated that Plaintiff could sit, stand, and walk, each for one hour at a time and sit four, stand one, and walk one hour during an eight-hour day; he also

---

[6]*Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk Reference* 2585-89 (58th ed. 2004).

[7]*Fiorinal* is used for relieving tension (or muscle contraction) headaches. *Physician's Desk Reference* 1855-57 (52nd ed. 1998).

[8]*Neurontin* is used in the treatment of partial seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

found her able to lift and carry up to five pounds frequently and twenty pounds occasionally but never more than twenty pounds (Tr. 370).  The doctor also indicated that Curtis could not use her hands or feet for pushing and pulling of arm/leg controls.  The Neurologist found her able to reach on an occasional basis, but never able to bend, squat, crawl, or climb.  Stubler also completed a pain questionnaire in which he indicated that her pain would distract her from adequately performing daily activities or work and that physical activity would greatly increase her pain to such a degree as to distract her or cause her to abandon her task (Tr. 371).  The doctor did not think that medication side effects would cause serious problems; he also thought that her pain was consistent with her underlying medical condition (Tr. 372).

On December 10, 2001, Dr. Stubler noted Plaintiff's statement that she was doing better though she still complained of difficulty with her left side, left lower back, and right leg swelling; following an examination which was, essentially, the same, the doctor increased the Neurontin, continued the Lortab and noted that Curtis would continue using a sequential stimulator (Tr. 417).  On January 10, 2002, the doctor continued the Fiorinal and Lortab prescriptions and added Methadone[9] to the

---

[9]*Methadone* "is indicated for relief of severe pain, for detoxification treatment of narcotic addiction, and for temporary maintenance treatment of narcotic addiction."  *Physician's Desk Reference* 2548 (52nd ed. 1998).

medical regimen (Tr. 416).  The Neurologist's examinations of February 8, March 8, and April 8, 2002 revealed no changes (Tr. 413-15).

In a letter to Plaintiff's attorney, dated April 26, 2002, Dr. Stubler stated that he saw no significant difference between the physical capacity evaluation completed by the physical therapist in August 2001 (*see* Tr. 331-44) and the one he had completed in November (*see* Tr. 370) "except that this patient's condition has worsened despite treatment.  She still is at least in the light work category in both evaluations but cannot perform her job in any case" (Tr. 412).[10]  On October 2, 2002, Dr. Stubler stated that he "did not feel that this patient is totally disabled and [he had] not stated that and in fact, [he had] stated this patient is in the light duty category" (Tr. 405); on December 2, 2002, the Neurologist stated the following: "[A]gain, I think the patient is not totally disabled but could be placed on light duty" (Tr. 402-03).  On December 12, 2003, Dr. Stubler noted that a neurosurgeon, Dr. Eugene A. Quindlen,[11] had

---

[10] The Court notes that the balance of Dr. Stubler's notes span May 6, 2002 through October 4, 2002 (Tr. 384-411, 429-35, 504).  The Court has reviewed these medical records, but is not going to summarize them all herein as Plaintiff's own recitation of the evidence concludes with Dr. Stubler's completion of the pain questionnaire on October 17, 2001 (Doc. 10, pp. 5-7).

[11] Dr. Quindlen had, on August 6, 2003, performed a right L4-5 hemi-semilaminotomy and foraminotomy L4-5 (Tr. 469-78).  He examined her for a period of three months following the surgery, after which he found her to have full strength in all groups of her lower extremities with normal gait (Tr. 437-40).

8

found Curtis to have reached MMI, giving her a 5% partial disability, and limiting her lifting to fifteen pounds; Stubler agreed with these findings, further noting that she could not return to her past work (Tr. 433; *cf.* Tr. 437, 446).

On December 18, 2003, Dr. Quindlen completed a physical capacities evaluation in which he found Plaintiff able to sit for two and stand/walk for two hours at a time while able to sit for four and stand/walk for four hours during an eight-hour day (Tr. 488). Quindlen further indicated that Curtis could lift and carry up to five pounds continuously, ten pounds frequently, and twenty pounds occasionally; the doctor found that she suffered no inability to use either arm or leg controls. Quindlen found Plaintiff able to bend, squat, crawl, and reach on an occasional basis but never able to climb.

On May 28, 2004, a consultative orthopedic examination was performed by Dr. William A. Crotwell, III who found Plaintiff to have full forward flexion, full extension, and full lateral motion in her upper extremities and neck; sensory and grip strength in those extremities were normal as well (Tr. 441-44). Curtis also had normal toe and heel walk. The doctor noted that forward flexion in the lower extremities was below normal, but that Plaintiff had made a poor attempt; Crotwell also noted inconsistency in back testing, meaning that "she has no major back problems" (Tr. 442). X-rays of the lumbar spine demonstrated some arthritis. The doctor's conclusion was that

Curtis could definitely carry out sedentary work, but he thought she could probably perform light work as well; he indicated he thought she was borderline malingering.  Crotwell also completed a physical capacities evaluation in which he found Plaintiff able to sit, stand, and walk one hour each at a time though she could sit for eight, stand for six, and walk for four hours during an eight-hour day (Tr. 444).  He further indicated that Curtis was able to lift up to fifty pounds occasionally, twenty-five pounds frequently, and ten pounds continuously; Crotwell also thought that Plaintiff was able to carry twenty-five pounds occasionally, twenty pounds frequently, and five pounds continuously.  Crotwell also indicated that Plaintiff was able to bend, squat, crawl, and climb occasionally, but could reach frequently.

The ALJ summarized this evidence but found Dr. Stubler's opinions inconsistent with some of the other medical evidence of record, so he rejected them (Tr. 31-33).  The ALJ, instead, gave greater evidentiary weight to Drs. Quindlen and Crotwell.

As summarized herein, Dr. Stubler indicated on more than one occasion that although Plaintiff was unable to return to her past work as a housekeeper, she was able to perform other work in the national economy (Tr. 370, 402-03, 405, 412, 433).  This is not inconsistent with the ALJ's finding that Plaintiff had not demonstrated disability for a twelve-month period, *see* 20 C.F.R.

§ 404.1505(a) (2005),[12] as she could perform a wide range of light work.[13]  Drs. Quindlen and Crotwell also found Plaintiff capable of performing light work, though not as restricted as Dr. Stubler found.  The Court finds that Curtis's claim that the ALJ did not properly consider the opinions and conclusions of her treating physician is without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Jo Anne B. Barnhart and against Plaintiff Mary A. Curtis.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION

---

[12] "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b) (2005).

AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United

States will pay the cost of the transcript.

DONE this 28th day of September, 2006.

                                   s/BERT W. MILLING, JR.
                                   UNITED STATES MAGISTRATE JUDGE